Thank you. Ms. Schwartz, you may begin. Good morning, Your Honor. May it please the Court, my name is Tara Schwartz, and I represent the defendant appellant in this action. The defendant appellant, the federal government here, filed this motion requesting the second Turkish intervention because the district court entered a temporary restraining order in a case which it lacks jurisdiction. Okay, I want to start with some big picture questions. You barely argued the jurisdiction issue. Can you explain to me why we need to construe this as a preliminary injunction instead of a TRF? Your Honor, the language of the district court's temporary restraining order said that it was in effect until a preliminary injunction hearing was scheduled. At the time we filed this day motion and up until yesterday, a preliminary injunction hearing hadn't been scheduled, that was actually calendared by the district court yesterday for, I believe, April 16th. So more than 10 days. More than 10 days, Your Honor, more than 14 days contemplated by Rule 65 and more than 28 days even to the extent that the plaintiffs had requested an extension of the TRO founded upon good cause. So the TRO will have been in effect for at least, you know, the period from February 9th when it was entered through April 16th when a preliminary injunction hearing has been scheduled, which is, you know, over two months. And the structure of the temporary restraining order, you know, provided relief to the plaintiffs by setting aside the federal government's September 30th funding suspension decision. Was it a suspension or a freeze? Is there a difference? Your Honor, the language that the Department of Transportation used in its communications with the Gateway Development Commission was that it was suspending funding. I'm not sure they're – What's the difference then between a suspension and a termination? What's the legally significant difference? So the Department of Transportation has not terminated the relevant contracts at issue here. It hasn't indicated any intention to terminate them. What the Department of Transportation did was suspend funding while it conducts a review of the Gateway Development Commission's compliance with discrimination laws. And wasn't the response received from the GDC in December on those questions? So what – how long does that process take to investigate the compliance and what's the status of that? Your Honor, the review of the Gateway Development Commission's compliance is ongoing. The Department of Transportation has not yet completed that. You know, the plaintiffs made certain representations to the district court. We took those representations at face value for purposes of the temporary restraining order because we were not seeking – you know, we responded to the TRO motion on something like 48 hours' notice. And the principal argument before the district court and the argument that we made to this court concerns the district court's jurisdiction. You know, we're not seeking to dispute the merits of the case at this time. Well, what I'm wondering, though, is that if by your concession that you're not seeking to terminate, it's merely freeze, then how are you irreparably harmed? Your Honor, we're irreparably harmed because the government is being obligated to pay out funds that it may determine, you know, as a result of the compliance review, that it was not obligated to pay or wasn't obligated to pay at a certain time. I think there are, you know, additional actions that the Department of Transportation could take as a result of the compliance review it's performing. What it decided to do here was suspend funding for a period of time. What about the fact that the argument that the next pay date comes around before the court of claims may have issued a decision? Or around the time the court of claims may have issued a decision in March, in March 12th, and that your next pay date comes on April 1st? How does that affect the irreparable harm analysis? So the Department of Transportation is currently in the process, and when I say currently I mean yesterday and today, of dispersing funds or processing payments that the Gateway Development Commission submitted at the end of February. The way that, for the most part, I mean there's different mechanisms for each of the relevant contractual agreements, but for the most part the payments are due at the beginning of the month following the Gateway Development submission of a request for reimbursement. And so there are payments that the Department of Transportation is currently processing. The next round of payments will likely come due at the end of March or early April. And you might have a decision from the court of claims by then? So there will likely be a decision by the court of federal claims by then. However, this past Friday the Department of Transportation filed its response or its opposition to the Gateway Development Commission's motion for summary judgment. And the claims or the counts of the complaint that the Gateway Development Commission moved for summary judgment on only pertain to the past due $205 million that it alleged it was owed at the time. Can you sharpen that for me? So does that mean the court of claims is only going to cover the initially withheld funds and not the future disbursements? Or that it's going to do both? What was the impact of the argument you just made? So the impact of the argument is that it is, the issue being presented to the court of federal claims is whether the government breached its obligations under the contracts with respect to the $205 million that the federal government has now paid out. And so the Department of Transportation has argued that the plaintiff's claims are moot because, you know, to the extent it only concerned the $205 million, the government has now paid that obligation. Whether the court of federal claims will make pronouncements that go beyond what the Department of Transportation has done in the past is sort of still unclear. Sorry. May I ask, when you say you told the court of claims that the challenge was moot, does that basically mean you have no claim here or you have no defense here? I mean, you're saying it's moot. I would think that the whole question of whether you breached the contract is relevant here. I mean, Section 200.339 is effectively something that they were able to argue was a contract obligation you had right under the Christensen Doctrine. Yes, Your Honor. And did they argue that you breached by not satisfying the conditions of Regulation 200.399? Your Honor, I'm not sure whether the Gateway Development Commission pointed directly to that regulation. As the plaintiffs do here, the Gateway Development Commission has alleged that the Department of Transportation breached express provisions of the four different contracts at issue. Why I'm asking this is if a decision is reached on the 12th that says DOT breached the contract, do you have any argument here in this court on the state's claim that you would have been found and breached in the court of claims? Your Honor, I think that sort of goes to the point of why the district court doesn't have jurisdiction over this case. Well, that's a separate point. But now I'm asking you this apropos of irreparable harm. Between now and the 12th, when the court of claims is expected to rule, and everybody seems to think it's clear that the court is going to rule. Is that correct? The court indicated that it would rule from the bench at a hearing on March 12th. So my concern for you is if you succeed, if you fail in the court of claims, isn't that the end of the matter for you? Just as I will probably ask the state's counsel whether if GDC prevails, that's the end of the claim for them. And that's why this whole thing doesn't present us with irreparable harm between now and April 1st, when you might have to make the next payment. Well, Your Honor, all that the court of federal claims could award is the past due $205 million, which has already been paid out. To the extent that TRO remains in place in this action, the Department of Transportation has ongoing obligations to make payments pursuant to the contracts. As I understand it, the court of federal claims can't award specific performance, and it can't direct the government to make payments. So you're saying the court of claims is not going to rule on whether you have to make an April 1st payment? Correct. And is it your position that if the court of claims finds that you breached it as to the payments up until March 12th, that you still have the ability to not pay going forward? Or is that effectively a decision adverse to you? I think the government's argument at this point before the court of federal claims is that if the court finds that the government breached the contract, that would essentially be an advisory opinion because there are no damages to award as a result of that. The court of federal claims will eventually – Are you saying you won't try to recoup the money from GDC? Your Honor, I – Because that would seem to be contrary to your argument. I mean, yes, you've paid it out, but the money is in dispute. You're saying you want it back. You should never have had to pay it. Your Honor, I can't make the representation that the Department of Transportation will forego, you know, any possibility that it could obtain this, you know, recoup the money. Well, then I think you may have a problem arguing mootness in the court of claims, but we'll leave that to that court. Yes, Your Honor. Eventually, the court of federal claims will likely have to rule on whether the government breached the contract at issue because the GDC is seeking consequential damages in that action. They would like to recover the monies they spent while the funding suspension was in place. And so, you know, as a principled matter, whether the plaintiffs there are entitled to consequential damages flows from whether the government, in fact, breached the contract. So that will be, you know, to the extent the litigation continues, that should be decided by the court of federal claims. But I don't believe that that necessarily has to be decided by March 12th because the GDC has not moved for summary judgment on the count of the complaint concerning the consequential damages. I want to move to the merits of it. Are you—I think you've conceded that the states couldn't bring a claim in the court of claims. Is that correct? Your Honor, we haven't conceded that. I don't want to say that the opposite is true, and they could, but that's an assertion that the plaintiffs have themselves made. Okay, I'm asking you, in your expert opinion, consistent with the legal theory that you are putting forward, do you believe that the states could bring a claim in the court of claims? The states could certainly try to litigate their status as third-party beneficiaries to the relevant contract agreement in the court of federal claims, whether they would prevail on that. And is their ability to bring a court— what is the legal significance for us if they are unable to bring a claim successfully? Anybody can file anything. If they are unable to successfully—and I don't mean prevail— but if they are unable to get themselves in court to litigate a claim, what does that do to your argument here? Your Honor, I don't think it's of consequence whether they have the ability. Why is that? Because the Tucker Act vests exclusive jurisdiction over contract claims, which these are in the court of federal claims, and the Gateway Development Commission is, in fact, litigating those contract claims. Not the states. Not the states. But the Gateway Development Commission is a creation of the states by parallel statute. It is certainly motivated and has able counsel representing interests that are very much aligned with the states' interests. Because your theory is now a—is not the same thing as an extension of NIH. Your theory is like an alter ego theory. Is that— No, your Honor. I think, you know, we certainly believe that NIH is applicable here. There's an open question as to whether the plaintiffs could bring their— you know, could successfully litigate these claims in the court of federal claims. They haven't tried to do so, so we don't know how that issue would be resolved. They, for, you know, whatever reasons they did, had the GDC file the action in the court of federal claims and tried to bring this parallel action as an EPA lawsuit. But NIH is certainly relevant because to the extent the plaintiffs argue here that the district court must have jurisdiction because they can bring their case in the court of federal claims, that's an argument that was rejected by the court in NIH. But NIH demanded a parsing, right? They demanded a parsing of what was a contract claim and what was a challenge to an improper decision making. And what would be helpful to me is for you to explain where's the line. Sure, your Honor. So in NIH, there were two separate things at issue. There was a challenge to policies that agencies had implemented on a broad scale saying that they were no longer going to fund certain types of research. And then there were grants that had been impacted as a result of that policy that had been, in fact, terminated as a result of the government's policy. What the NIH court said is that to the extent you're challenging the termination. Your Honor, I promise you I've read NIH a million times. What I'm interested in hearing is where you think the line is that makes something a contract and something a challenged policy because you are saying it is on the contract, that their argument, which they are fashioning as a policy argument, and the district court treated as a policy argument is actually a contract argument. So I need you to tell me what is the line drawing that the Supreme Court has instructed that we do that puts this case on the contract side. Your Honor, so what the plaintiffs are seeking here is not prospective relief that would affect parties beyond those to this action. And the plaintiffs nowhere assert that they're challenging a policy as distinct from the September 30th suspension of funding pursuant to these contracts. No, but wouldn't they say that's the policy? Out of the blue somebody came up with a new policy that we had to go back and do an examination for? Well, the plaintiffs haven't actually said that. What they're saying and the relief that they're seeking was a set aside of the suspension as it applies to these four sets of agreements between the DOT and GDC, and the relief that they, you know, even though their claim is styled as an EPA claim and what they've sought. Okay, so maybe I'll ask the question a different way. We are going to have to put some words on paper, right? What are the words that we should use to say when something is a contract claim, even if styled as a policy claim, and when it is not? I need you to articulate the rule that you are asking us to find that puts you on the side of the contract. Your Honor, I guess how I would respond to that is when the plaintiffs are challenging an action by a federal agency that necessarily impacts an existing contract, that is a contract claim that can be litigated.  Well, an existing contract. I think the distinction in NIH was that, you know, there... In NIH, they said that there was no contract at all because there was no consideration, right? So... That was the argument with respect to the actual contract, the claims that the court determined to be contract claims, but separately... That's not the same thing here. They're saying we're not... We are warned parties to that contract. We are not making a contract claim. We are claiming that there was some arbitrary and capricious policymaking done by the APA that's inconsistent with the way that policymaking is supposed to be done by the APA. So what changes that to a contract claim? I mean, I guess the distinction here between this and NIH is that in NIH, there were policies that there would have been no plaintiff to... Assuming there weren't grant terminations in connection with that case, the plaintiffs were just challenging the policy itself. Those plaintiffs would not have had any ability to bring suit in the court of federal claims to say, hey, there's this policy out there that's going to impact the fact that the government no longer funds X, Y, and Z things. We would have been able... You know, we would have been entitled to a grant that, you know, for COVID research, but now we can't. So, you know, the only recourse for anyone in that situation would have been to... That's not a contract claim because there's nothing that anyone could have sued on in the court of federal claims. That challenge to a policy could only be brought pursuant to the APA. I would find it easier if you and eventually the states to talk about this in terms of the two-prong analysis the case law establishes, which is to look to the source of the rights and then to look to the relief being sought. So let's start with the source of the rights. If I understand it correctly, and I'm sure, and I invite the states to correct me if I've misunderstood, the source of the rights is a federal regulation, 200.339, which tells the government it can only withhold payments if it finds the recipient failed to comply with legal duties, which it says it has not. You're conducting a review, but you haven't found them in violation. And second, that you failed to give reasonable explanation, which makes the decision arbitrary and capricious. Is that how you understand it? As I said, the state will correct me if I'm wrong. Yes, that's how I understand the argument. Am I also correct in that it's your position that neither of those rights arise except for the fact that there's a contract here? Correct, Your Honor. And actually they protect GDC, not the states in the first instance. And so to the—well, you're nodding yes. Is that correct that that's how you view it? Yes, Your Honor. Okay. Now, is that the basis on which you're saying, well, the source of the claim is the contract? Yes, Your Honor. Then the states will respond to that. And then the relief being sought, they emphasize this in their 28J letter, is just the suspension of the—or is a stay of the suspension. They say they didn't request and the court didn't grant an order that you pay anything. Now, I understood you to be saying in your briefs that that doesn't matter and that you're relying at least in part on Judge Gorsuch's opinion in NIH that an order vacating the government's decision to terminate grants is in every meaningful sense an order requiring the government to pay those grants. Is that the basis for you, the relief prong of your argument? Yes, Your Honor. The plaintiff's assertion that they're asking only for sort of declaratory relief here and not monetary relief elevates form over substance. What they've done here is, you know, within 48 hours of the TRO being entered, the plaintiffs were demanding payment from the government and insinuating that the government wasn't complying with the TRO because the GDC had not yet received wire transfers for $205 million. All right. Well, now that you've clarified that that's your argument on those two prongs, they can tell us why we shouldn't be persuaded by it. Why I want to ask you is, of course, to procure a stay, we have to find that it is strongly likely that you're going to succeed on this jurisdictional argument that it's a contracts action, that the relief they're seeking is problematic for the reasons we've just discussed. Now, I understand that you have arguments that NIH, FACR, other cases support you, even though they are not contract signatories, and at least there's a question whether they can go into the court of claims. And you say that in both those suits, there were parties who were not the contractors. You take that position with the grantees in NIH, and I'm wondering whether that's so clear. I mean, obviously, the Supreme Court didn't address the question, but am I right that there's a contract with the hospital or the larger entity, but then there are grants to the individual applicants? Your Honor, in NIH, there were — We don't have anything like that here. That's why I'm asking. You're right, Your Honor. Here, we have party — you know, we have just non-parties to the contracts, but in NIH, there were very — even though the court didn't address this explicitly in its decision, there were very clearly parties that were in privity with the government and parties that were not in privity with the government.  You're saying that in one of the arguments the grantees made was that they couldn't go into the court of claims, but isn't it still — aren't you still requiring this court to do some extension of NIH and then also to adopt the reasoning of Thaker, which is not a controlling opinion on our part? On this court, though, of course, we pay attention to all the decisions of sister circuits. Your Honor, I think what we're asking the court to do is sort of look at the reasoning of NIH. No, no, I understand that, but can we say that it's strongly likely that you're going to succeed, as opposed to — I may read this and be very sympathetic to your arguments or not, but there's a debatable question here, and why should we put a stay into effect rather than, for instance, put this on a very fast track for decision by a merits panel? Your Honor, the reason why we — our stay motion is still relevant is because the government has these ongoing obligations to make payment to the Department of — to the GDC, while, you know, even to the extent that we could get sort of expedited briefing schedule in place, the government is paying out tens of millions of dollars, if not hundreds of millions of dollars. But the money is on loans. I mean, there's something in the papers that suggests some of it is what I'll call grants, and some of it is loans for which the states are the guarantors. Have I understood that correctly? I believe that's right, Your Honor. So what's being paid out now, grants, loans, a mix of the two? It's a combination of both. So with respect to the loans, are you arguing you won't be able to recoup because the states are going to have to repay those loans, aren't they? Your Honor, I don't know the answer to that question. I'm not sure how exactly the mechanisms work whereby loan money is issued to the Gateway Development Commission. Well, also, your argument about GDC not being able to pay you back, I understand. But what makes you think that the sovereign states wouldn't be able to pay you back if it were ultimately decided that this day should not have been entered? Well, the states haven't offered to post bond or any security in connection with this case. Maybe they asked to be excused from it. And I can pursue that with them, but it's not quite the same as situations where the entity who you'd have to recoup from, you know, has nothing in their bank account. The states are somewhat differently situated, aren't they? Yes, your Honor, although I'm not, you know, I haven't worked through all the sort of legal theories by which the government could recoup money paid to the GDC from the states. I understand that, but it is your burden to show irreparable harm. Yes, your Honor, and I think that our irreparable harm here comes from at least portions of the tens of millions of dollars that the government is going to continue to pay out being, you know, grant money as opposed to loan money. You can't even tell us how much of it is grants and how much of it is loans, though. And the ability to not get that money back depends upon that number. Isn't that right? I mean, if it turns out that 90% of them are loans and 10% of them are grants, you have a less cataclysmic risk if they are unable to pay back. Is that correct? If that were the case, your Honor, but I believe it's, there are tens of millions of dollars that are being paid out pursuant to grants. It's your burden to show that you're being irreparably harmed, though. And if you can't tell me how much of it is loans versus how much of it is grants, then how are we supposed to weigh that uncertainty and that speculation in your favor in terms of irreparable harm? Well, I, so I don't know the answer to how much is grants versus how much is loans. I would say that it is, you know, before the district court, it was the plaintiff's burden to show irreparable harm. And their whole argument concerning irreparable harm was based on the fact that they didn't, they were, the GDC or the Department of Transportation had held up 200. Right. They've now done, I mean, the government has now paid out the $205 million. So it's, you know, there's sort of an absence of anything in the record indicating that the plaintiffs here are still suffering any irreparable harm or would suffer irreparable harm were the court to stay, were this court to stay, the district court's TRO. We may be persuaded by your argument today, but just for a moment, assume we're not, how fast are you ready to have this briefed, the challenge to the stay, the appeal from the stay on the merits? Your Honor, I think we could have this briefed within two weeks. You know, your jurisdiction argument, of course, is pretty much briefed. Right. I mean, you might tinker with it in light of today's questions, but then you would, at that point, you would also challenge the, whether you would raise challenges beyond jurisdiction, you expect, on the merits of the grant of the injunction? Your Honor, I believe we may raise merits arguments in connection with the PI hearing that's occurring at the district court. Yeah, okay, so you think you could brief in two weeks, and we'll hear from your adversary on that, too. Okay. Thank you. Okay, thank you. May it please the Court, Jeremy Feigenbaum for the States. I'll start this morning with Judge Perez, if you were about to jump in with a question. 30 seconds in, and then I've got a bunch of questions for you. Go ahead. I'm going to jump right in on the questions. Happy to take questions to start. Okay, so I want to make sure that I understand. I understand that the September 30th suspension itself was a disputed action, but are you also changing, challenging any of the policies in the September 30th or December 1st letter? Or is it just the September 30th suspension? We are challenging the suspension decision announced in the September 30th letter. We think that the subsequent letters and the reason we bring them up show shifting reasoning and demonstrate some of the inadequacy of the reasoning in the initial policy decision, but we do not think there have been new policies. We think there was one policy to establish a funding freeze as of September 30th, and the agency stood with that policy decision for months as a result. So that was how we styled our claim, especially focusing on the arbitrary and capricious part of the claim as to the subsequent letters. Okay. Does the March 12th decision have any—what impact does that have on us? Does that move the pace? Like, what would it do? It might help if I zoom out for one second on irreparable harm and just answer a couple of questions in succession because this will fold into that. So there were three questions this morning already that came up on irreparable harm. Judge Perez's question about whether there's irreparable harm in a case about a freeze, Judge Merriam's question about whether there's irreparable harm from this sort of policy leverage argument, and then Judge Radji's questions about whether this April 1st versus March 12th and how it intersects. So just to tick through them really quickly. So first, on the original question you asked this morning, Judge Perez, we don't think there is irreparable harm, even leaving aside the dates for a moment, that the federal government can establish in this case because this is not a case about irrevocable spending with no options down the road. Again, this morning, my friend on the other side represented this is not a termination and her client has no interest or intention of terminating the project. But if that's right, there's nothing irreparable here at all. This is a $15-plus billion project. We're talking about a couple hundred million dollars. I understood the government or the Department of Transportation, since you're both the government. Thank you, Your Honor. Suggested that it's not clear that they would agree that they had to pay all of the money and that might depend on what their review showed. I'm not sure why that would be the case, but let's go with that for a moment. If it's correct that maybe the ultimate outcome would be that they don't have to pay all of this money, but they pay it out now because the stay has been suspended or the suspension has been stayed, what's your response to that? Why don't they have some irreparable harm? Let me address the conclusion and then also fight the premise at the end. Sure. So on the conclusion, I didn't really follow in the scale of a $15 billion project how we'd end up with such little money left to spend absent a termination situation. We do not have this tunnel going through yet. There's far more to do on this project. And if you're not terminating the project, and again, counsel says there's no plan to terminate, I'm not sure what finding they were even suggesting was possible that would get you so that you don't even have a couple hundred million dollars left. Because the money is fungible. It's not like this was this hundred million versus other hundred million. There's four sources of grants and loans, and collectively they comprise the project. So it's not like we said it has to be this pot and this pot wouldn't be paid later, but that pot would be paid. We actually didn't even ask for any specific money disbursements at all, as this Court's question showed, but leaving the Tucker Act aside for a moment, I just don't understand for irreparable harm how you'd not get to the point where there's just hundreds of millions in a $15 billion project that could be offset later. Well, let me assume that they decide that there's a subcontractor or there's someone in this who's not following whatever policies they say should be satisfied here. If I understand your argument, it's that, well, yeah, maybe they don't have to pay money if you're going to have that contractor, but the tunnel is going to cost what the tunnel costs to build, so if you have to substitute somebody else in or whatever, the cost is still going to be the same. Is that basically what your response to that kind of an argument is? Sort of. Let me just iterate one step further and say this gets to the colloquy with Judge Merriam this morning. I get the policy leverage argument that maybe will hold this money because there's some policy goals that we want to have, and I'm a government. I'm sympathetic to the tools you might want to use for policy leverage, but if you have the burden of meeting irreparable harm, you've got to say something about what that policy leverage would be if it's not going to be the money alone, and as Judge Merriam pointed out this morning, the only items in the record of policy leverage were to get commitments from GDC that GDC provided on December 8th, and neither in briefing nor at the podium nor in the record are there any other representations from the Department of Transportation about what policy leverage they're looking for. And I just don't understand how that meets the burden of irreparable harm. So I do quibble with some of the premises, as I mentioned before, but I don't even understand how, if you accept them, we have a federal government meeting its burden in this particular case, given that there is nothing in the record totally unlike NIH, totally unlike Department of Education, where the federal agency is saying anything about an actual policy it has concerns about. So for that reason, because it's a freeze, not a termination, and because there's no policy leverage in the briefing, argument, or record about what the government's trying, the federal government is trying to achieve here, I don't really understand that even before you get to what I'm calling the dates problem. And then we get to the dates problem, which Judge Raggi and now Judge Fares were asking about, and I want to make a couple points about irreparable harm versus mootness for a moment. We're not making an argument that the case is formally moot, and here's why. There are some points of factual agreement between my friend and me this morning. GDC has, in the Court of Federal Claims, a retroactive money damages claim, either for the money that was unlawfully withheld or for consequential damages. We have a prospective-only TRO that specifically restrains implementation of this September 30th funding freeze or suspension policy going forward. Was GDC's argument in the Court of Claims based in any part on the reg that you rely on, on 200.339? My understanding is that it's based on the contract, and there's language in the contract that talks about the regulation, but they're relying on it as the contract term. Well, as I said, the Christensen Doctrine says that if the parties are controlled by a federal statute or regulation, that becomes part of the contract, whether it's explicit or not. What I'm asking is whether their argument was in part one of the reasons that they unlawfully didn't pay us is because they never found us to fail to comply with legal duties, which is the only way, you're arguing, that they can do that given this regulation. Is that part of the argument to the Court of Claims? Yes. And here's my understanding of what you get from a Court of Federal Claims judgment in this case, both in the judgment and in the reasoning. And I agree the judge has said he's going to rule from the bench on March 12th. That's why we think the March 12th date is potentially so significant here. So what you would get is a judgment for money damages about the unlawfully withheld money retroactively. But, of course, the judge would explain that freezing that money in the way that DOT did was ultimately a breach of that contract. And that's how they get to a judgment of money damages. And as a result, I'm not saying it's formal mootness because we would still have a prospective form of relief and they would only have a retroactive judgment. But it would be the case that as a practical matter, the Department of Transportation would know that even if this case never existed or whatever happened to this case, reinstituting that policy would lead them to do something a judge has already said breaches a contract with GDC. And that affects what I think might be their irreparable harm going forward, even if it's not Article III mootness because their judgment is only backwards looking, whereas our judgment is forwards looking. Well, I actually thought that it would be beneficial to you to say that the Court of Claims decision would be determinative because if it goes against the Department of Transportation, I don't understand them to be arguing, perhaps they can clarify this, that they think they would be able to continue to maintain the suspension going forward when they've lost on it as of the date of the judgment. But by the same token, if DOT were to prevail in the Court of Claims and the court were to say, no, there was no breach of the contract just because you didn't give them the 200.339 notice, that would pretty much be the end of your suit too, wouldn't it? Your suit here. I don't want to fight the part of the question too hard that you said is helpful to my cause, but I want to resist slightly. The reason I'm not making the full-throated it would be determinative, it would get to some sort of Article III mootness, is that the way the Court of Federal Claims works, as I understand it, and I'm not the litigator in that court, as you know, we're not actually parties in that case, is that we, the Court of Federal Claims, really just does retroactive judgments. As a result, the Federal Government can keep breaching a contract. Now, it knows that the contracting party will file successive amended complaints demanding money for the breach of contracts. And as I understand it, really not an expert on the Court of Federal Claims, there are some cases where a Federal agency has chosen to do that. But because the Department of Transportation would know that, I agree it would be weird at best for the Department of Transportation to want to persist with an I'm sorry, one of the things that I am getting tangled up in here, and it would help me, is there's a difference between something being unlawful and between something being in violation of contract. And it sounded to me a moment ago that you were conflating them. I hear what I said wrong. You can't, right, okay. It's not how I meant it, in violation of a contract. Okay, but if they chose to violate a contract, that has, what does that have to do with whether or not their policymaking was arbitrary and capricious with coming up with a policy that may violate a contract, but could also just be problematic because it was arbitrary and capricious. So I was trying to do Judge Radji's questions in halves. On the second half, I completely agree. I actually don't think, even if the Department of Transportation wins in the court of federal claims, that that would dispose of our case. I was talking about the situation where the Department of Transportation loses, and then it knows it would be in violation of a contract, and then query if it wishes to persist with a policy it knows would lead it to keep violating a contract. If it wins. What rights do you have apart from contract rights? I'm not sure I understand that, if these rights and obligations effectively are part of the contract. So I don't think they all are, and I don't think the arbitrary and capricious doctrine on which we're relying is a part of the contract. Do you think if they showed that it was arbitrary and capricious that they could survive a contract challenge? You don't think that the prohibition on arbitrary and capricious decision-making is implicit in the contract? I'm not sure if it's implicit in a contract. I don't have contract rights. I'm really not wrestling on a contract. I don't think that's how this BFC case is playing out. You don't have a contract claim, and I'm suggesting that while part of this might bolster your they can't show irreparable harm argument, it might hurt your contract argument because effectively every right you're claiming exists only because there's a contract. If there's no contract, there's no obligation under either the reg or the clause, and I'm suggesting to you that the court of claims considers their argument that this was arbitrary and capricious and says, I'm not persuaded it was. You think you've got a separate claim in the district court on that? This is there you could be looking for inconsistent results argument. Yeah, so a couple of thoughts on that. Let me just start with the premises because I think I disagree with the question here. So the first thing is, I don't think it matters that the regulation or the arbitrary and capricious conduct relates to a contract, and I think this is extremely important. So I'm just going to read from Justice Barrett's controlling concurrence in NIH for a moment, which refutes the justice score such language that my friend on the other side is relying on that you referred to earlier, Judge Radji. In discussing the portion of the challenge that could go forward, Justice Barrett said that the agency guidance discusses internal policies related to contractual rights. The agency guidance does not transform a challenge to that guidance into a claim founded upon a contract that only the CFC can hear because founded upon is the language of 1491, the language of the Tucker Act. And our claims are not founded upon a contract for three reasons. First, we're not signatories to the contract. Second, the source of our rights in no way is the contract, and we don't have contractual rights from a contract that we didn't sign. And third, we're not seeking contract remedies. So I'm using the framework that Your Honor referred to earlier, talking about the sources of law and talking about what the remedy is. If I could talk about the remedy for a moment that I think is quite clear. If GDC were to win its case, it would get a retroactive remedy for money damages. We won our case below and got the only thing we were entitled to, as Judge Vargas said repeatedly, was the only thing we were entitled to, in order restraining one specific policy from continuing to be implemented. If my friends on the other side's client wanted to fix the problem of arbitrary and capricious reasoning, they could have given different reasons for the freeze. That would do nothing to solve their contract case with GDC, because either the contract entitles GDC to money or it doesn't. But it would remedy the arbitrary and capricious holding that our Court did, and it would be a new policy. And we'd evaluate if that new policy was consistent with the sources of law on which we relied. Even if the Court of Claims were to find there was no breach of this contract, the GDC got everything it was entitled to in terms of the contract. You think you've got a separate claim saying you can't terminate this contract because you have to give more specific reasons. Yes. I think we only have a separate claim. A non-signatory could come in and basically force action with or inaction with respect to a contract that has been adjudicated between the parties based on that. I'm troubled by that. I'm troubled by the suggestion that any party that's got enough injury to confer standing now has the ability to come in and challenge whether a contract does or doesn't have to be complied with. So if I could give answers that both sound in first principles and in precedent, because this has come up in non-Tucker Act context, where the exact same issue arises. Let me just start with first principles for a moment, but I do want to talk about Patchuk, and I do want to talk about New York v. Yellen. So on the first principles point, I think two things. First, our remedy is not better than the remedy available to a contracting party. A contracting party can rely on all sorts of rights in a contract, then go further than the government's sort of self-imposed regulations or statutes Congress has passed or constitutional provisions or the requirement of reasoned decision-making, which is actually an extremely low bar compared to compliance with contractual rights. And even if we win, the most we get is an order vacating that particular policy for those particular legal violations. So we're actually getting far less than GDC would normally be able to get. It's just that this arises in a hypothetical where GDC loses on its contract case, but we still have our entirely separate APA challenges and arbitrary and capricious challenges. And there are limiting principles. What happened in the Court of Claims is the Court of Claims would have said, there's no violation in your suspending this contract. And you come into federal court and you say, yes, there is, and suspend the contract, even though GDC lost in the Court of Claims. So let me give you the — Yes, that's the outcome you want us to say is permissible here. Absolutely. And let me give you the precedents that I think actually make that clear in other contexts. So there's one that we cite in our brief a bit, but I want to flesh out a bit at the podium today, which is the Patrick case that both of the parties cite. It arises under the Quiet Title Act, which is, like the Tucker Act, sort of a system for structuring who has their own title actions against the federal government. And that was a case where the Secretary made a policy decision about taking title ultimately for tribes, ultimately for gambling. And an individual who was not the adverse title holder brought an APA challenge to the Secretary's decision and said, that's an invalid decision, and it's going to work Article III harms on me based on the impact gambling is going to have on the parcel next door. But he was not an adverse title holder at all. And he brought a claim to that challenge, and the U.S. Supreme Court, in a majority opinion by Justice Kagan, allowed it to go through with detailed reasoning about why, and structured it, just like I'm structuring Tucker Act arguments today, said, if you're an adverse title holder, your claims are going to get channeled to the Quiet Title Act, and you are not going to have an APA claim. But if you're not the adverse title holder, and you're challenging straightforwardly the underlying agency decision that led it to take title, you can still bring your APA claim. And that hypothetical could be exactly the same. An adverse title holder could lose a title challenge, but a claimant with an APA claim that has the downstream impacts of shifting title, recognized by the Court as one of the possible downstream impacts, could have that exact same result. So that's the Quiet Title Act. It happens already in our law. Same with New York v. Yellen and the Anti-Injunction Act. You could have an individual taxpayer bringing a claim about the taxes that they have to pay get channeled to tax court. And maybe they lose and have to pay those taxes. But the States, who were independently harmed by the tax laws, brought a challenge to the underlying tax statute and could have gotten constitutional relief challenging the tax statute. And that would have had downstream impacts on the taxes that individuals have to pay. And each time, no one thought that was inconsistent judgments, because it's not a situation where an agency is under a mandatory injunction and a prohibitory injunction. It just means two different parties with different Article III injuries and different sources of law and theories of relief both bring challenges, and one wins and one loses. But we have that in the law all the time. One district court vacates a policy. Another district court doesn't vacate a policy. You see that in our law over and over. And so in the Quiet Title Act, in the Anti-Injunction Act, we already see this happening all the time in our law. And I don't see a reason the Tucker Act shouldn't structurally be exactly the same way. Because, frankly, the parade of horribles on the Department of Transportation side is significantly worse. You end up with a party with genuinely independent Article III injuries. No one's disputing there's a hole in the ground in New Jersey, and it is a public safety danger. And if the project had remained frozen but for the TRO that we obtained from the district court, eventually we would have had to step in, secure the site. It's a genuine danger. We would have had to spend our own money to secure the site and keep it safe. And my friend's argument is essentially, too bad. You've got to count on someone else to be willing to sue. But perhaps the contracting — I don't know if this affects the argument today, but can you just satisfy my curiosity? Why is it New York and New Jersey that have to secure the site as opposed to GDC? Well, GDC won't have money to secure the site anymore. Well, but that gets into the whole question of what is the relationship between GDC and the states if you're assuming their responsibility in that area? How much are you also really involved in the litigation in front of the Court of Claims? Now, I know you're going to say you're not, and I'm not sure that preoccupies us today, but it does raise questions. The safety obligation is in the first instance is GDC. Oh, absolutely. But same could be with a private company where ultimately the same issue would arise in that circumstance. And I'm not sure, like you said, I'm not sure it should preoccupy you today because the same issue could arise in that context. And no one is suggesting, and my friends in the district court did not suggest, GDC has the money for all time to keep the site secured, and no one's disputing it is a public safety risk. And so it falls on the states. And I don't see why it would be different with a private company. I do think certainly for the emergency motion stage, my friends have forfeited any argument. But to the extent it's GDC's obligation, your first claim for the monies that you're spending are against GDC, right? But just to be clear, GDC doesn't have the money, right? They're not in breach of a duty they could comply with. I mean, in terms of law, the party that's injured you is GDC. Now, because they don't have any money, you're looking for the deep pocket, which is the Department of Transportation. And that's your argument of irreparable harm for how you got this injunction in the district court. But that will go to the merits of whether you carried your burden there. So I get what you're saying. Can I just — So though you act for GDC in that context, you shouldn't be viewed as basically the equivalent of GDC in the court of claims. So I think two things on that. That is what I'm saying. But to be clear, we're not acting for GDC any more than a private company in the exact same situation. We're dealing with a crisis in our sovereign territories of a hole in the ground that can't be secured. The entity happens to be a bi-State entity. It could be a private entity, and we'd step in either way. Now, I heard your point about deep pockets. I just want to be clear. We didn't go after the deep pockets. We went after the party that did the unlawful action exactly as the APA imagines we would bring a lawsuit against. So it's not like GDC violated the APA. The APA applies to the Federal Government. The Federal Government is the one that adopted the September 30th unlawful freeze or suspension of disbursements, to Judge Perez's question. I think suspension of disbursements is what the suspension is, which is the same thing as a freeze. And so because we find ourselves in that situation, that's who violated the law. That's who created the situation that works independent Article III injuries on us. And as I think the Ninth Circuit put it in community legal services, the upshot of two sovereign immunity waivers structurally does not make sense to leave an injured party, injured by undisputedly unlawful agency action, with no forum in which to vindicate the Article III harms. I'm interested in some of the other cases that are swirling around. Can you talk to me about how we should understand and what we should do with the Corps and the National Science Foundation? Yeah, so your guess is as good as mine on how to pronounce the Corps, so I will just use your pronunciation. So two distinctions with that case, or one distinction and one response beyond that. The first distinction, and this goes to some of the colloquies I was having with Judge Raggi this morning, is that actually the relief that was being sought in that case was materially different. So if we're looking at the sort of two factors from Megapulse, they were formally seeking grant reinstatements, which was also an issue in some of the other cases my friends are relying on. We, of course, are just seeking an order vacating, and in this case just enjoining one specific policy. That specific policy was this freeze on these reasons, on these findings. So I think that's a meaningful difference just in terms of the relief that's being sought. And then it's, for me, a little hard what to know to make of aspects of the Corps, because it doesn't address community legal services. It doesn't grapple with any of the reasons. It's extremely bare. So like Judge Raggi said earlier, they're only useful as persuasive precedents, and I don't find persuasive sort of bare on acknowledgement of the issue that was lurking in the case when community legal services, I think persuasively, gives all the reasons to think it should be resolved the other way. Okay. Do you want to talk about National Science Foundation and the District of D.C.? Yeah, so that has the exact same pair. The D.D.C. case has the same issue with reinstatement, and then has the issue that it didn't really grapple with TUDL, which I think is the published D.C. Circuit precedent from 2006 that started this whole area, and that I think actually shows that we're not going to see the same kind of practical problems, my friends fear, because this has been the law since 2006, that the Tucker Act does not vest exclusive jurisdiction in the Court of Federal Claims, where it doesn't vest jurisdiction in the Court of Federal Claims at all. And so I don't think that we're going to see those sorts of practical problems, and the D.D.C. opinion doesn't really grapple with TUDL, and has the same issue with grant reinstatement that we don't have in our case. And what about NIH in California? So NIH has a couple of points. I think it's actually quite a helpful opinion. I think Justice Barrett's controlling concurrence works quite well for our meaningfully distinct causes of action and situation here. So I already mentioned Justice Barrett herself distinguishing between policies related to grants and claims actually founded upon a contract as meaningfully distinct concepts. I think that's obviously quite helpful. We're not denying that the regulations that we had brought up in our case are related to grants, but certainly not founded on a contract. It's founded on a regulation. It's founded on arbitrary and capricious. And then I think the other thing that's really helpful for us from NIH is that it's quite clear in footnote one that Justice Barrett is quite confident that the parties in front of her have the ability to go to the Court of Federal Claims. She says, nor is one of the dissenting justices correct to say that this approach leaves the plaintiffs without any prospect of relief. Each forum has the authority to fully adjudicate the claims over which it has jurisdiction. And, of course, my friend's argument is that we are parties that are left without any forum in which to go, that the upshot of two sovereign immunity waivers structurally produces no forum in which we can vindicate our Article III harms from undisputedly unlawful agency action. Well, that could also be read to suggest you're entitled to go to a forum for whatever relief that forum is able to offer you. And that still leaves us with the question of whether you're basically pursuing a contracts claim, which you cannot pursue in the district court. And to be fair, I'm not saying Justice Barrett was siding with us. I was just saying it's very clear she didn't think she was resolving this issue against us. Well, but in the concurring opinions, concurring and dissenting in part, in Justice Kavanaugh's he says that the core of plaintiff's suit there was that the government unlawfully terminated grants, and that's a breach of contract claim, he says. Meanwhile, Judge Gorsuch, in his opinion, says an order vacating a government decision to terminate grants is in every meaningful sense an order requiring the government to pay those grants. So one seems to question the relief part of the test and the other the remedy part, and neither seems to help you. That's where I am troubled. Help me out. Sure, happily. So I'll start by noting one was a dissent in full and one was a dissent in part, and the part you're reading from is definitely the part Justice Gorsuch was dissenting from because it's the part about the underlying policy that could eventually leave. I'm not sure I agree with that, but go ahead, tell me why. Okay, sure. So the reason I think why is because Justice Barrett obviously didn't think that the fact you're vacating something that could have impacts on grant disbursements had to be dispositive on its own because she allows a challenge to a policy to continue. What NIH specifically requested, the plaintiffs in the case called NIH, what the plaintiffs in that case specifically requested was, again, grant reinstatement, and that's why Justice Barrett is carving out the difference between a policy and a grant reinstatement that's meaningfully different from what we've sought in our case. And as Judge Vargas really, I think, took pains to emphasize what she thought we were seeking and what she granted in this case. She didn't say money needed to flow. She didn't say it had to flow on a particular schedule. She said that decisions about whether it flows have to be made without regard to this one unlawful policy. And, yes, it's about grants. It's about money. But that is a perfectly normal APA remedy. That decision is unlawful, and there may be consequences, like for title under PACHA. So you think if the government said, okay, we'll suspend our, or we'll agree with the stay of our suspension, but we're just not going to pay on time, that you wouldn't be having them back in front of Judge Vargas pretty quickly? So we would need to evaluate what the decision was relative to recent decision-making, to regulations, whether there was a policy or a final decision at all, all ingredients of an APA claim. And we actually said, and Judge Vargas quoted, in oral argument, that if, and I actually think I have this one, yes, if DOT has other... But there's no doubt that you went into Federal court. I mean, this is not to be critical in any way, to get them to pay the money. Absolutely, the harm comes from money not flowing. I actually didn't mean to fight that at all. I absolutely didn't mean to fight that. But that was true in PACHA too, that the individual who was harmed was because title was going to go to the tribe and there was going to be gaming. But he was not the adverse title holder. What he challenged was an underlying policy decision that the incidence of which was title changing hands and allowing ultimate gaming. The fact the way you're ultimately harmed has to do with contracts, is related to contracts, is not the same as having your own claim founded on a contract, which is the language of the Tucker Act. And ours is not founded on a contract because we didn't sign a contract, we didn't rely on contractual rights, and we didn't ask for specific performance. We asked to restrain one particular policy. Now, the predictable effect, or one possible predictable effect, good enough for Article III and irreparable harm, is that DOT didn't have other reasons to do it. DOT said it didn't have other reasons to do it. So DOT was going to turn the spigot back on. And when my friend mentions we did go back to the court to say, basically, why hasn't money flowed, it was because they had said the policy was the only reason money wasn't flowing. Could this argument be maintained if we were to find that both your regulatory claim and your arbitrary and capricious claim are, in fact, parts of the contract? So, yeah, I took two thoughts on this. One, whether or not a contract chooses to also incorporate those points, if I'm not relying on them being bound because it's in the contract, I'm just relying on them being bound, then I don't really see why that makes a difference. And it wouldn't seem to make sense that a third party, an injured third party's ability to vindicate its rights from unlawful agency action would turn on whether the contract also said you must follow arbitrary and capricious requirements or you need not. But there's no obligation to give reasons for taking action or for the, whether regulatory or otherwise, except that there's a contract. And so I'm having trouble with your statement that, oh, well, these rights exist regardless of whether they're in the contract. They are in the contract by virtue of precedent that says when there's a law or regulation that binds a party and then they contract, that becomes part of the contract, whether they expressly state it or not. So that's why I think this is a breach of contract claim. I'm not sure I'm totally in agreement on that, Judge Raggi. Well, I know you're not yet. Fair enough. Fair enough. That's why I'm mistaken. It's a fair point. But let me fight the premise and just say I'm not sure the only reason that they're bound to their own regulations or the only reason that they're bound to not be arbitrary and capricious in their decision-making or to have pretextual decision-making is because of a contract. Now, it's true. Well, there's no injury without the contract to anybody. So, yes, in this case, what has to happen, obviously, is they're breaking a contract. But that doesn't mean it's the source of law. It means it's a factual ingredient in how we get harmed in the case that's totally different from whether you're founded on it. If you look at the megapulse factors you were mentioning earlier, they ask about source of law. They ask about scope of remedy. They don't ask is it related to contracts, is the ingredient contracts. And if that were right, then what Justice Barrett said in her controlling concurrence about an agency guidance discussing internal policies relating to grants does not make it founded upon wouldn't make sense because the injured parties there are also injured by the loss of grants. They're not injured by abstract policy statements about grants that don't have any impact on them. And that would mean Justice Barrett's dividing line couldn't work either. It just proves way too much. Thank you. This was very helpful. We will take the case under advice.